UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ALLYSA VOLKERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-04037-SLD-JEH |
| | ) | |
| NATIONAL CREDIT SYSTEMS, INC. | ) | |
| d/b/a NCSPLUS INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER</u>

Before the Court are Plaintiff Allysa Volkert's Motion for Summary Judgment, ECF No.
21, Defendant National Credit Systems, Inc. d/b/a NCSPlus Incorporated's ("NCSPlus") Motion
for Summary Judgment, ECF No. 22, NCSPlus's Motion to Bar Statements Pertaining to the
Non-Receipt of NCSPlus' Letter Request for Additional Identifying Account Information, ECF
No. 23, and NCSPlus's Supplement to Defendant's Motion to Bar Statements Pertaining to the
Non-Receipt of NCSPlus' Letter Request for Additional Identifying Account Information, ECF
No. 34.  For the reasons that follow, Volkert's summary judgment motion is GRANTED IN
PART and DENIED IN PART, NCSPlus's summary judgment motion is GRANTED IN PART
and DENIED IN PART, and NCSPlus's motion to bar statements and its supplement to that
motion are DENIED.

## BACKGROUND[1]

NCSPlus is a consumer collection agency which began efforts in September 2021 to collect an alleged $919 debt from Volkert on behalf of its client, Louis Capra & Associates ("Capra"). In April 2022, NCSPlus sent Volkert a written notice informing her of the $919 Capra debt. The notice included a claim number, the last four digits of Volkert's social security number, the amount due, and the name, address, and phone number of Capra.

Volkert's attorney sent a letter ("the Volkert Letter"), dated December 29, 2022, to NCSPlus requesting that NCSPlus (1) cease communication with Volkert pursuant to 15 U.S.C. § 1692c(c) of the Fair Debt Collection Practices Act ("FDCPA"), (2) provide verification of the alleged debt, (3) provide the name and address of the original creditor, if different than the current creditor, and (4) mark the alleged debt as "disputed" unless advised otherwise. Volkert Letter 1, Pl.'s Mot. Summ. J. Ex. 5, ECF No. 21-5. NCSPlus received the Volkert Letter on January 3, 2023. The letter lists Volkert's first and last name, the name of the original creditor as "Louis Capra Associates, LLC," and the debt amount. *Id.* The letter does not include the claim number that was listed on the April 2022 notice from NCSPlus to Volkert.

NCSPlus attempted to locate Volkert's account by searching for her first and last name but was unsuccessful. NCSPlus explains that it "carried out a search of its logs and internal systems for 'Alyssa Volkert' [sic] which returned no hits from the volume of records and

---

[1] At summary judgment, a court must "view the evidence in the light most favorable to the non-moving party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). Unless otherwise noted, the factual background of this case is drawn from Volkert's statement of undisputed material facts, Pl.'s Mot. Summ. J. 2–5; NCSPlus's statement of undisputed material facts and additional relevant facts, Def.'s Mot. Summ. J. 3–9; Volkert's statement of disputed material facts and additional material facts, Pl.'s Resp. Def.'s Mot. Summ. J. 4–6, 8–10, ECF No. 29; NCSPlus's statement of disputed material facts and additional material facts, Def.'s Resp. Pl.'s Mot. Summ. J. 4–6, ECF No. 30; Volkert's reply to NCSPlus's additional material facts, Pl.'s Reply Supp. Mot. Summ. J. 2–4, ECF No. 31; NCSPlus's reply to Volkert's additional material facts, Def.'s Reply Supp. Mot. Summ. J. 2–3, ECF No. 32; and exhibits to the filings.

accounts handled by NCSPLUS."[2]  NCSPlus's Resps. Pl.'s First Interrogs. & Reqs. Produc.

Docs. 4, Pl.'s Mot. Summ. J. Ex. 13, ECF No. 21-13.  NCSPlus also searched its records for its

client Capra but was unable to find Capra either.  Goldberg Dep. 33:23–34:1, Pl.'s Mot. Summ.

J. Ex. 6, ECF No. 21-6 (NCSPlus's representative testifying that, in trying to locate Volkert's

account, he searched NCSPlus's database for Louis Capra but was unsuccessful); *id.* at 34:10–

35:1 (same); *id.* at 45:17–22 (same).

     NCSPlus asserts that because it was unable to locate Volkert's account based on the

information provided in the Volkert Letter, it stamped the letter and mailed it back to Volkert's

attorney.  The stamp requested additional information, stating, "We are unable to locate your

account.  Please provide the following: Our claim number[,] Our client's name (your creditor)[,]

Your full social security number or, the last four numbers of your ss #[.]  This is an attempt to

collect a debt.  Any information obtained will be used for that purpose."  Example Letter

Showing Red Stamp 1, Pl.'s Mot. Summ. J. Ex. 10, ECF No. 21-10.

     Volkert's attorney asserts that his office did not receive the returned letter from NCSPlus

requesting additional information.  Volkert's attorney did not follow up with NCSPlus to confirm

that it had received the Volkert Letter nor did NCSPlus follow up with Volkert's attorney to

confirm that he had received the returned letter from NCSPlus requesting additional information.

     Volkert filed this suit on March 7, 2023.  Compl., ECF No. 1.  She mistakenly served the

wrong party several times but successfully served NCSPlus on June 6, 2023.  Aff. Serv., ECF

No. 9.  On June 29, 2023, NCSPlus requested the credit bureaus delete the tradeline for Volkert.

Both parties moved for summary judgment on August 23, 2024.

---

[2] In its response to Volkert's interrogatories, NCSPlus wrote that it searched its database for "Alyssa," but during a deposition, NCSPlus's representative clarified that he searched NCSPlus's database using the correct spelling of Volkert's first name, "Allysa," which was listed on the Volkert Letter.  Goldberg Dep. 45:8–16, Pl.'s Mot. Summ. J. Ex. 6, ECF No. 21-6.

**DISCUSSION**

## I.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Where, as here, the parties have filed cross-motions, "[t]he ordinary standards for summary judgment remain unchanged," meaning that the court "construe[s] all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). The court "cannot weigh conflicting evidence, assess the credibility of the witnesses, or determine the ultimate truth of the matter, as these are functions of the jury." *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 851 (N.D. Ill. 2017). The court's singular role at summary judgment is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation marks omitted).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). To defeat summary judgment, the "nonmov[ing party] must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Conclusory allegations, unsupported by specific facts, will not suffice.").

## II.    Analysis

Volkert brings one claim against NCSPlus alleging a violation of the FDCPA, 15 U.S.C.

§§ 1692–1692p.  *See generally* Compl.  She alleges that NCSPlus violated § 1692e(8) of the

FDCPA because it reported credit information about her that it knew or should have known was

false.  Pl.'s Mot. Summ. J. 1.  Volkert moves for summary judgment, arguing that the undisputed

facts show that NCSPlus received the Volkert Letter from her attorney informing NCSPlus that

Volkert disputed the $919 debt, but NCSPlus failed to flag the debt as disputed.  *Id.* at 1–2.

NCSPlus cross-moves for summary judgment, arguing that the undisputed facts show that it was

unable to identify Volkert's account based on the information provided in the Volkert Letter and

therefore it did not violate the FDCPA because it did not communicate information which it

actually knew or should have known to be false.  Def.'s Mot. Summ. J. 1–3.  NCSPlus also

contends that if there was an FDCPA violation, NCSPlus is entitled to the bona fide error

defense, 15 U.S.C. § 1692k(c), and that Volkert has failed to prove actual damages.  Def.'s Mot.

Summ. J. 1–3.

### a.  NCSPlus's Motion to Bar Statements by Volkert Pertaining to the Non-Receipt of the Returned Volkert Letter

Concurrent with its motion for summary judgment, NCSPlus filed a motion *in limine*

asking the Court to bar Volkert from asserting that her attorney did not receive the stamped and

returned Volkert Letter and additionally asking the Court to find that NCSPlus had satisfied a

presumption of receipt under the mailbox rule.  *See generally* Def.'s Mot. Bar Statements.

NCSPlus later filed a supplement requesting that the Court bar the declaration from Volkert's

attorney, Schwartz Decl., Pl.'s Mot. Summ. J. Ex. 4, ECF No. 21-4, which attested that neither

he nor anyone else at his firm received the returned Volkert Letter because, as NCSPlus argues,

the declaration "is uncorroborated and self-serving," Def.'s Suppl. Mot. Bar Statements 1.

5

NCSPlus repeatedly emphasizes that Volkert "refused to engage in discovery" on the issue of whether NCSPlus's letter was received because Volkert's attorney declined to have a representative of his firm sit for a deposition and testify regarding the firm's mail handling procedures.  Def.'s Mot. Bar Statements ¶ 27 ("Defendant requests that the Court find it prejudicial and improper for plaintiff through her counsel to allege that they did not receive Defendant's follow up communication, but refused to engage in discovery on this issue."); Email from Ruddy Abam, NCSPlus's Counsel, to Carl Schwartz & Gary Nitzkin, Volkert's Counsel (June 12, 2023, 2:27 p.m.), Def.'s Mot. Summ. J. Ex. 6, ECF No. 22-6 at 1–2 ("Please let us know some good dates or times in the near future for . . . [a] deposition of your office's designated witness who can speak to communications between plaintiff and [NCSPlus]; communications sent by and between your office and [NCSPlus] relating to marking the account as disputed."); Email from Carl Schwartz, Volkert's Counsel, to Ruddy Abam, NCSPlus's Counsel (June 13, 2023, 12:31 p.m.), Def.'s Mot. Summ. J. Ex. 6, ECF No. 22-6 at 1 ("[A]s we stated before we will not agree to produce a witness from our firm.  We view this as an attempt at a fishing expedition into our firm.").

Volkert argues that the motion *in limine* should be denied because (1) NCSPlus provided no legal authority for the proposition that Volkert may be precluded from making factual assertions regarding whether the returned letter was received, (2) the purportedly returned Volkert Letter is not a defense to Volkert's claim, (3) the mailbox rule creates only a presumption of receipt which can be rebutted, and (4) the fact that Volkert's counsel would not allow a representative from his firm to be deposed is not a legal justification for barring Volkert from making statements about not receiving the purportedly returned Volkert Letter.  *See generally* Pl.'s Resp. Def.'s Mot. Bar Statements, ECF No. 25.  Volkert asserts that NCSPlus is

not actually alleging a discovery violation because Volkert's attorney was never served with a subpoena or notice to appear for a deposition, and therefore Federal Rule of Civil Procedure 37 is not implicated. *Id.* at 6; Fed. R. Civ. P. 37(d)(1)(A)(i) (providing that a court may order sanctions if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition"). She further argues that the returned Volkert Letter—"whether it was sent or not, whether it was received or not"—does not support NCSPlus's bona fide error defense and is therefore essentially irrelevant. Pl.'s Resp. Def.'s Mot. Bar Statements 6–8. Additionally, Volkert argues that she has "clearly rebutted" the mailbox rule's presumption of receipt because "[u]nder Illinois law, if the addressee denies receiving the communication, the presumption is rebutted. Whether the communication was received becomes a question of fact to be decided by the trier of fact." *Id.* at 8–10 (quoting *Kass v. PayPal Inc.*, 75 F.4th 693, 702 (7th Cir. 2023)).

In its reply, NCSPlus fails to address *Kass* at all or cite to any rules or caselaw to support its argument for why the Court should bar Volkert's statements—instead it simply parrots what it wrote in its motion, often verbatim. *Compare, e.g.*, Def.'s Mot. Bar Statements ¶ 22 ("Plaintiff's counsel has failed to rebut the fact that NCSPlus sent to their office a request for more account information. Rather, they merely assert that they never received it. Sadly, Defendant cannot be responsible for how plaintiff's counsel manages their mailbox or what occurs at their office."), *with* Def.'s Reply Supp. Mot. Bar Statements 3, ECF No. 28 ("Plaintiff's counsel has failed to rebut the fact that NCSPlus sent to their office a request for more account information. Rather, they merely assert they never received it. Sadly, Defendant cannot be responsible for how Plaintiff's counsel manages their mailbox or what occurs at their office.").

NCSPlus's motion is flawed for several reasons.[3]  First, as Volkert notes, NCSPlus has cited to no legal authority that supports barring Volkert from taking a factual position in her summary judgment briefing.  Second, while NCSPlus urges the Court to disregard Volkert's attorney's affidavit because it is "uncorroborated and self-serving," the Seventh Circuit has rejected this "misconception" that a self-serving affidavit is inadmissible evidence.

> We hope this discussion lays to rest the misconception that evidence presented in a "self-serving" affidavit is never sufficient to thwart a summary judgment motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.

*Payne*, 337 F.3d at 773.  And finally, NCSPlus entirely fails to address the fact that, under Illinois law, a statement of non-receipt by the intended recipient does rebut the mailbox rule's presumption of receipt.  NCSPlus asserts that "Plaintiff is required to do more than simply say they [sic] did not receive the letter.  They have [sic] failed to do so."  Def.'s Mot. Bar Statements 9.  Under *Kass*, however, that is an incorrect statement of the law, and NCSPlus does not even attempt to respond to this argument.  *See Kass*, 75 F.4th at 704.

Because NCSPlus has provided no legal authority for its motion and has failed to address binding precedent, the Court DENIES NCSPlus's Motion to Bar Statements Pertaining to the Non-Receipt of NCSPlus' Letter Request for Additional Identifying Account Information and NCSPlus's Supplement to Defendant's Motion to Bar Statements Pertaining to the Non-Receipt of NCSPlus' Letter Request for Additional Identifying Account Information.

---

[3] Volkert filed a response opposing NCSPlus's supplement to its motion arguing that the supplement was "nothing more than a belated argument that th[e] Court should bar" her attorney's declaration and requesting that the Court strike NCSPlus's reply because it was filed without leave of Court.  *See* Pl.'s Resp. Suppl. 2, ECF No. 35 (citing Civil LR 7.1(B)(3)).  Because the Court denies NCSPlus's motion and supplement on other bases, it need not address these arguments.

### b. Communicating Information Which Is Known Or Which Should Be Known To Be False, 15 U.S.C. § 1692e(8)

"To establish a claim under the FDCPA, [a plaintiff] must prove that (1) [the defendant] qualifies as a 'debt collector' as defined in § 1692a(6), (2) the actions of which she complains were taken 'in connection with the collection of any debt,' and (3) the actions violated one of the FDCPA's substantive provisions." *Prendergast v. First Choice Assets, LLC*, 317 F. Supp. 3d 1018, 1023 (N.D. Ill. 2018) (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010)). Volkert alleges that NCSPlus violated § 1692e(8) of the FDCPA because it failed to update its tradeline to report that Volkert disputed the $919 Capra debt. A debt collector violates § 1692e(8) by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including . . . fail[ing] to communicate that a disputed debt is disputed."

Volkert bears the burden to prove the elements of her FDCPA claim and the Court can only grant summary judgment in her favor if no reasonable jury could find that she has not established the elements of her claim. *See* Fed. R. Civ. P. 56(a) (providing that a moving party must show that "there is no genuine dispute as to any material fact"); *Pugh*, 259 F.3d at 625 (explaining that a genuine dispute as to any material fact exists only if, based on the evidence in the record, a reasonable jury could find for the nonmoving party). Conversely, the Court can only grant summary judgment in NCSPlus's favor if it shows that no reasonable jury could find that Volkert *has* established every element of her claim.

It is undisputed that NCSPlus is a debt collector within the meaning of the FDCPA and that NCSPlus's actions to which Volkert objects were done in connection with the collection of a debt. *See* 15 U.S.C. § 1692a(6) (defining "debt collector"); *Gburek*, 614 F.3d at 382 ("Generally speaking, a communication from a debt collector to a debtor is not covered by the FDCPA unless

9

it is made 'in connection with the collection of any debt.'" (quoting 15 U.S.C. § 1692c(a))). It is also undisputed that NCSPlus failed to communicate to the credit bureaus that Volkert disputed the $919 Capra debt. Volkert Jan. 30, 2023 Equifax Report 2–3, Pl.'s Mot. Summ. J. Ex. 8, ECF No. 21-8; Volkert Jan. 30, 2023 TransUnion Report 2–3, Pl.'s Mot. Summ. J. Ex. 9, ECF No. 21-9. The only question is whether NCSPlus knew or should have known that the debt was disputed.

NCSPlus argues that it did not *knowingly* make any false, deceptive, or misleading representations. Def.'s Mot. Summ. J. 10–13. It acknowledges that it received the Volkert Letter but argues that the letter did not contain sufficient information for NCSPlus to identify Volkert's account and therefore NCSPlus could not have known that the information it transmitted to credit bureaus was false. *Id.* at 12 ("Considering the information provided in the Volkert Letter and the information needed for NCSPlus to find the right account, [NCSPlus] was not placed on ***actual*** notice that plaintiff's account was disputed."). NCSPlus asserted that there was nothing more it could have done to locate Volkert's account due to "the volume of records and accounts handled by [NCSPlus]." *Id.* at 9 (quoting NCSPlus's Resps. Pl.'s First Interrogs. & Reqs. Produc. Docs. 4); *see id.* at 12 ("[D]ue to the volume of accounts managed by NCSPlus, it could not reasonably conduct a more manual search for hundreds of accounts to locate plaintiff's account based solely on the creditor's name."). NCSPlus does not provide any evidence regarding the number of accounts it handles but it does state that it "is a small business with approximately five (5) employees . . . who managed accounts." Def.'s Reply Supp. Mot. Summ. J. 4 n.2 (citing Goldberg Dep. 12:9–11).

The evidence shows that NCSPlus did not have actual notice of the disputed debt because NCSPlus's representative testified that he was unable to find Volkert's account based on the

information provided in the Volkert Letter. *See, e.g.*, Goldberg Dep. 45:12–16 ("A. Well, I searched for it based on the spelling of her name in [the Volkert] [L]etter. Q. And based on the spelling of the name in [the Volkert] [L]etter you could not find the account; true? A. I could not."). If § 1692e(8) required actual knowledge by the debt collector to sustain a violation, the Court's analysis could end here. The statutory language, however, is "information which is known *or which should be known* to be false," 15 U.S.C. § 1692e(8), and evaluating what NCSPlus should have known "allow[s] probing into what [it] could have or should have done," *Johnson v. Waypoint Res. Grp.*, 596 F. Supp. 3d 1184, 1190 (S.D. Ind. 2022).

Here, the parties dispute whether NCSPlus should have known that Volkert disputed the $919 Capra debt. NCSPlus maintains that it simply did not have enough information to find her account and that it had sent her attorney a letter indicating that it needed more information but never heard back. Def.'s Mot. Summ. J. 10–13. Volkert argues that "[c]learly there was more that NCS[Plus] could have done" to locate her account using the Volkert Letter because NCSPlus was "somehow" able to find her account after she filed this lawsuit—even though her Complaint contains the same identifying information that was in the Volkert Letter. Pl.'s Resp. Def.'s Mot. Summ. J. 2; *see also* Pl.'s Reply Supp. Mot. Summ. J. ¶ 2 ("[NCSPlus] admits that only after it was served with the [C]omplaint in this case, was it able to find [Volkert]. [Volkert]'s [C]omplaint provided no additional information to identify [Volkert]'s account than that which was provided in [the Volkert Letter]."). Volkert reasons that because NCSPlus was able to locate her account after being served with this lawsuit, NCSPlus should have been able to locate her account after receiving the Volkert Letter. NCSPlus makes no attempt to explain this discrepancy. Indeed, while it acknowledges that it was able to identify Volkert's account after

this lawsuit was filed and it received "additional account information," Def.'s Mot. Summ. J. ¶ 28, it does not specify what additional information was provided by this lawsuit.

NCSPlus instead argues that it would be "unfair," *Id.* at 12 (quoting *Wise v. Credit Control Servs, Inc.*, No. 16 C 8128, 2018 WL 5112983, at *7 (N.D. Ill. Oct. 19, 2018)), to hold it liable because Volkert "is the principal author of the harm of which she complains," *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 498 (7th Cir. 2007). NCSPlus analogizes to *Wise*, arguing that "this lawsuit could have been entirely avoided if [Volkert] simply included the additional specific information already in her possession regarding her account, including her social security number and account claim number. But she did not." Def.'s Mot. Summ. J. 13 (citations omitted).

NCSPlus's reliance on *Wise* is unavailing. In *Wise*, the plaintiff-debtor sent a dispute letter to the defendant-debt collector which included her name, address, the file number of her account, the name of the creditor, and the last four digits of her social security number. *Wise*, 2018 WL 5112983, at *1. The plaintiff sent that letter, however, to an old fax number that was not listed on any collection notices she had received, and that the defendant no longer monitored. *Id.* The court found in the defendant's favor because it was plaintiff's own conduct that precluded the defendant from knowing that she disputed her debt: "In this case, plaintiff was the 'principal author of the harm of which she complains': she had only to send a letter to [the defendant] at the fax number displayed on the collection notices [the defendant] had sent her and include the proper account number, as the notices specifically directed her to do." *Id.* at *7 (quoting *Ross*, 480 F.3d at 498). In *Wise*, the defendant never received the dispute letter which contained sufficient identifying information. Here, however, NCSPlus admits it received the Volkert Letter but asserts that the letter did not contain sufficient identifying information.

Volkert has not established that NCSPlus should have known, as a matter of law, that she disputed the $919 Capra debt nor has NCSPlus conclusively established that it should not have known that the debt was disputed before it reported Volkert's credit information. Viewing the evidence in the light most favorable to Volkert—as the Court must do when considering NCSPlus's summary judgment motion—a jury could find that NCSPlus should have been able to locate her account with the information given in the Volkert Letter. However, viewing the evidence in the light most favorable to NCSPlus—as the Court must do when considering Volkert's summary judgment motion—a jury could find that NCSPlus did all it could do to find Volkert's account because it searched its database by debtor and creditor name and it requested additional information from her counsel but never heard back. In other words, there are competing inferences that one could draw from the evidence but at summary judgment, "a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence." *McCottrell v. White*, 933 F.3d 651, 657–58 (7th Cir. 2019) (quotation marks omitted).

The Court's role at the summary judgment stage is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Whether NCSPlus should have known that Volkert's debt was disputed is material because it is an essential element of Volkert's FDCPA claim. Because there is a genuine issue of material fact regarding whether NCSPlus should have known that Volkert disputed the $919 Capra debt, summary judgment is improper and the motions as to Volkert's FDCPA claim are DENIED.

### c. Bona Fide Error Defense, 15 U.S.C. § 1692k(c)

In the alternative, NCSPlus argues it is entitled to summary judgment because, even if an FDCPA violation occurred, it was the result of a bona fide error as defined by 15 U.S.C. § 1692k(c). Def.'s Mot. Summ. J. 13–21. Section 1692k(c) establishes that a debt collector may not be held liable "if [it] shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005) (emphases omitted). "In order to claim this defense, the burden is on the defendant to show (1) 'that the presumed FDCPA violation was not intentional'; (2) 'that the presumed FDCPA violation resulted from a bona fide error'; and (3) 'that it maintained procedures reasonably adapted to avoid any such error.'" *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349 (7th Cir. 2018) (quoting *Kort*, 394 F.3d at 537).

Volkert opposes NCSPlus's motion and also moves for summary judgment on the bona fide error defense, arguing the defense is unavailable because NCSPlus denies that it committed any violation, it has not identified any bona fide error it committed, and that any purported error is merely an excuse for its "laziness and carelessness." Pl.'s Resp. Def.'s Mot. Summ. J. 13–18; Pl.'s Mot. Summ. J. 10–12. Because Volkert is moving for summary judgment on an affirmative defense for which NCSPlus bears the burden of proof, summary judgment is proper if Volkert "(1) produces evidence that negates the defense[] or (2) shows that there is an absence of evidence to support [it]." *Johnson Health Tech N. Am., Inc. v. Grow Fitness Grp., Inc.*, No. 17-cv-834-wmc, 2020 WL 68037, at *7 (W.D. Wis. Jan. 7, 2020) (citing *Celotex*, 477 U.S. at 325).

NCSPlus asserts that it is entitled to the bona fide error defense because it did all it could do to try and identify Volkert's account to flag her debt as disputed: (1) It searched for her account in its database using "Allysa," "Volkert," and "Louis Capra & Associates," and (2) It

returned the Volkert Letter to her attorney requesting additional information. *See, e.g.*, Def.'s Mot. Summ. J. 15–16. NCSPlus's representative testified that NCSPlus has written policies and procedures addressing how it handles debtor disputes, Goldberg Dep. 47:8–48:23, but NCSPlus did not produce those policies despite a request from Volkert's attorney, *see id.* at 48:24–49:2 (Volkert's attorney stating that Volkert had not received a copy of NCSPlus's written policies and procedures and requesting that they be produced); Pl.'s Mot. Summ. J. 10–11 (representing that NCSPlus had not provided a copy of the policies and procedures as of the date of filing).

The fatal flaw in NCSPlus's attempt to use the bona fide error defense is that it has not identified any actual error. NCSPlus details its procedures for locating accounts but does not identify any point in the procedure in which it made a mistake. According to NCSPlus, the only reason it could not find Volkert's account was that the information in the Volkert Letter was insufficient. So NCSPlus did nothing wrong there. Then NCSPlus attests that it requested additional information by stamping and returning the Volkert Letter to Volkert's attorney. So NCSPlus did nothing wrong there either.

The Seventh Circuit is clear that an FDCPA *violation* is different from a bona fide *error. See Kort*, 394 F.3d at 536–38. A defendant cannot claim the bona fide error defense simply by showing that it did not intend to violate the FDCPA; it must also show that its unintentional violation was the result of a good faith mistake, *i.e.*, a bona fide error. *Id.* Additionally, a defendant must show that the procedures it maintains are designed to avoid the *actual error* that occurred. *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1156 (7th Cir. 2022). Here, NCSPlus has identified no specific error, and it simply points to its general policies for how it typically handles identifying accounts for disputed debts. Without identifying an error that led to its presumed violation and procedures reasonably adapted to address that specific error, NCSPlus

15

cannot avail itself of the bona fide error defense.  *See Ewing*, 24 F.4th at 1155–56 (finding that

"written policies that explained, step-by-step, how a receptionist should properly direct legal

faxes" were reasonably adapted to avoid the actual error of an "errant misdirected fax," but that

"unspecified FDCPA training for employees and general policy of reporting disputes" were *not*

reasonably adapted to avoid the actual error of the defendant not monitoring its fax inbox).

Accordingly, NCSPlus's motion for summary judgment on the basis of the bona fide

error defense is DENIED, and Plaintiff's motion for summary judgment as to the bona fide error

defense is GRANTED.  NCSPlus may not assert a bona fide error defense at trial.

### d.  Actual Damages, 15 U.S.C. § 1692k(a)

Lastly, NCSPlus asserts that summary judgment is proper because Volkert has no actual

damages and because she has provided no evidence showing that she experienced any adverse

financial harm or compensable emotional distress.  Def.'s Mot. Summ. J. 21–26.  Though

Volkert alleges in her Complaint that she suffered pecuniary and emotional damages in the forms

of stress, frustration, and a lowered credit score, Compl. ¶ 14, NCSPlus asserts that the evidence

tells a different story, Def.'s Mot. Summ. J. 21–22.

The FDCPA allows a plaintiff to recover for any actual damages that result from an

FDCPA violation as well as statutory damages of up to $1,000.  15 U.S.C. § 1692k(a).  To

survive summary judgment, a plaintiff must provide evidence showing that the statutory

violation caused the harm she suffered.  *Gillespie v. Blitt & Gaines, P.C.*, 123 F. Supp. 3d 1029,

1032 (N.D. Ill. 2015).

NCSPlus seemingly conflates the distinct concepts of injury for purposes of Article III

standing and injury for purposes of recovering actual damages under the FDCPA.  *See Johnson*

*v. Waypoint Res. Grp., LLC*, No. 1:19-CV-3823 RLM-DLP, 2022 WL 1983968, at *3 (S.D. Ind.

June 6, 2022) (recognizing that "injury for standing and injury for actual damages are

separable"). For example, NCSPlus quotes *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021), in which the Seventh Circuit emphasized that its "bevy of recent decisions on FDCPA *standing* [has made] clear . . . [that] anxiety and embarrassment are not injuries in fact" (emphasis added). Def.'s Mot. Summ. J. 24. Perplexingly, NCSPlus argues that "[i]f the Court finds, as the evidence confirms, that [Volkert] has shown no proof of actual damages, she likewise fails on her Article III standing burden," *id.* at 25, but also avers that it "is not arguing that [Volkert] lacks standing to pursue her claim," *id.* at 26 n.10. In any event, the Court rejects NCSPlus's equivocal standing challenge because the Seventh Circuit has unequivocally held that a violation of § 1692e(8) constitutes reputational harm that is closely related to the harm caused by defamation and is therefore sufficient to confer Article III standing. *Ewing*, 24 F.4th at 1153–54 ("[T]he harm Congress sought to remedy through § 1692e(8) is analogous to the harm caused by defamation, which has long common law roots. . . . Reputational harm of this sort is a real-world injury; being portrayed as a deadbeat who does not pay her debts has real-world consequences.").

In her response, Volkert does not assert that she suffered any pecuniary damages nor does she respond at all to NCSPlus's arguments on that issue. Any arguments regarding pecuniary damages are therefore waived. *Nichols v. Mich. City Plant Plan. Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

Volkert instead argues that actual damages are not an element of an FDCPA claim and therefore she is not required to prove that she suffered actual damages. Pl.'s Resp. Def.'s Mot. Summ. J. 18–19. To the extent NCSPlus's motion should be read to suggest that it is entitled to summary judgment as to liability because of Volkert's failure to prove damages, Volkert's

17

argument is well-taken.  "[A] plaintiff does not need to prove knowledge or intent to establish liability, nor must he show actual damages."  *Wise v. Zwicker & Associates, P.C.*, 780 F.3d 710, 713 (6th Cir. 2015); *see also Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013) ("Proof of injury is not required when the only damages sought are statutory.").

NCSPlus, however, appears to primarily argue that, regardless of whether there was a statutory violation entitling Volkert to statutory damages, Volkert has not proven that she suffered actual damages.  NCSPlus asserts that "there simply is no evidence that [Volkert] sustained recoverable, actual damages," Def.'s Mot. Summ. J. 25, and therefore it is entitled to judgment as a matter of law on the issue of actual damages.  The cases cited by Volkert provide no guidance on what a plaintiff must show to recover actual damages under the FDCPA.  Pl.'s Resp. Def.'s Mot. Summ. J. 18; *e.g.*, *Delgado v. I.C. Sys., Inc.*, No. 17 C 1366, 2017 WL 9939630, at *1 (N.D. Ill. May 18, 2017) (clarifying the difference between actual *injury*, which a plaintiff must show to have Article III standing, and actual *damages*, which need not be alleged to survive a motion to dismiss).

Volkert additionally argues that even if she is required to prove actual damages, she has done so because she testified that "she suffered significant stress from knowing that [NCSPlus]'s tradeline was on her credit report and was not reported as disputed."  Pl.'s Resp. Def.'s Mot. Summ. J. 19 (citing Volkert Dep. 85:7–86:11, Pl.'s Mot. Summ. J. Ex. 3, ECF No. 21-3). Volkert testified that "just dealing with this being on [her] credit" and having to "deal with calling an attorney for help . . . was just very stressful and overwhelming."  Volkert Dep. 85:7–15.  She stated that "this whole process and the fact that it's dragged out has just been a lot" and the fact that she had to hire an attorney, "which those cost money as well[,] . . . has just been overwhelming and stressful."  *Id.* at 85:19–86:11.  She also reported feeling stress because

18

"having all this come up" stirred up memories of an apartment with her ex-boyfriend that she is "trying to move on from." *Id.* at 85:9–12.

 "When a plaintiff's only evidence of damages for emotional distress is the plaintiff's own testimony, she must explain the circumstances of the injury in reasonable detail and not rely on conclusory statements. . . ." *Johnson*, 596 F. Supp. 3d at 1196; *cf. Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021) (analyzing a similar statute, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, and recognizing that a plaintiff must describe emotional distress in "reasonable detail" and cannot rely on "conclusory statements" to recover actual damages (quotation marks omitted)); *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834–35 (7th Cir. 2004) (affirming that the plaintiff could not recover actual damages for emotional distress for an FCRA violation "because his evidence of emotional distress [wa]s limited to his own conclusory assertions" and "[w]ithout further evidence to buttress those assertions, [the plaintiff]'s case could not go forward"), *as amended* (Nov. 16, 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *Konter v. CSC Credit Servs., Inc.*, 606 F. Supp. 2d 960, 970 (W.D. Wis. 2009) (granting the defendant's motion for summary judgment because "[a]ll of [the] plaintiff's 'evidence' of the harm he suffered rests on broad and conclusory statements about his emotional condition at the time" and the "plaintiff . . . failed to draw a causal connection between [the] defendant's alleged [FCRA] violation and his emotional distress and . . . failed to offer reasonably detailed evidence of his injuries").

*Boerner v. LVNV Funding LLC*, 358 F. Supp. 3d 767 (E.D. Wis. 2019), is a useful point of comparison to understand what constitutes "reasonable detail." In *Boerner*, the court acknowledged that "[t]he evidence before [it] on damages [was] relatively thin," but ultimately denied the defendants' summary judgment motion on the issue of emotional damages because it

found that the plaintiff had met his burden of explaining his injuries in sufficient detail as seen in the following passage:

> He testified that he suffers a loss of appetite that resulted in him shedding ten pounds from an already frail frame. He has increased his smoking to over a pack of cigarettes per day, and he experiences a chronic, low-grade headache as a result of the [defendants' actions]. . . . His hands shake from the nerves, and he has difficulty concentrating at work. He describes his anxiety about [the defendants' actions] as all-consuming, if not in those terms.

*Id.* at 781 (citations omitted). Here, Volkert's only evidence of actual damages is her deposition testimony, and she has failed to provide reasonable detail to explain the circumstances of her emotional injuries. She stated that knowing that NCSPlus was not reporting her debt as disputed "has just been overwhelming and stressful," Volkert Dep. 86:6–11, but provides no specific details about her injury like the details given in *Boerner*. *Cf. Biggs v. Village of Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990) ("We appreciate that it can be hard to articulate emotional upset caused by treatment considered to be unfair, but . . . when the injured party provides the sole evidence of mental distress, he must reasonably and sufficiently explain the circumstances of his injury and not resort to mere conclusory statements." (alterations and quotation marks omitted)). Volkert's conclusory statements are insufficient to support her claim for emotional damages and she has pointed to no evidence that would raise a genuine issue of material fact as to this claim.

At this "put up or shut up" stage in litigation, *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024) (quotation marks omitted), Volkert bears the burden to put forth evidence of her emotional distress "beyond her own cursory testimony," *Johnson*, 596 F. Supp. 3d at 1197; *cf. Persinger*, 20 F.4th at 1194 ("[D]amages for emotional distress must be proved with more than conclusory statements."). Volkert has failed to meet that burden and is therefore not entitled to actual damages under 15 U.S.C. § 1692k(a)(1).

Accordingly, NCSPlus's motion for summary judgment on the issue of actual damages is GRANTED. Volkert may not recover actual damages, though she may be able to prove that she is entitled to statutory damages under § 1692k(a)(2)(A) at trial.

## CONCLUSION

For the foregoing reasons, Plaintiff Allysa Volkert's Motion for Summary Judgment, ECF No. 21, is GRANTED IN PART and DENIED IN PART. Volkert's motion is GRANTED as to the bona fide error defense, 15 U.S.C. § 1692k(c), and therefore NCSPlus may not assert the bona fide error defense at trial. Defendant National Credit Systems, Inc. d/b/a NCSPlus Incorporated's ("NCSPlus") Motion for Summary Judgment, ECF No. 22, is GRANTED IN PART and DENIED IN PART. NCSPlus's motion is GRANTED as to the issue of actual damages, 15 U.S.C. § 1692k(a), and therefore Volkert may not recover for actual damages at trial. NCSPlus's Motion to Bar Statements Pertaining to the Non-Receipt of NCSPlus' Letter Request for Additional Identifying Account Information, ECF No. 23, and NCSPlus's Supplement to Defendant's Motion to Bar Statements Pertaining to the Non-Receipt of NCSPlus' Letter Request for Additional Identifying Account Information, ECF No. 34, are both DENIED.

The Court VACATES the currently set Jury Trial date. Pursuant to Civil Local Rule 16.1(B), the Court DIRECTS the parties to participate in a settlement conference with Magistrate Judge Eric I. Long. The Court will set pretrial and trial dates, if necessary, after the settlement conference.

Entered this 4th day of December, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

21